STATE OF MISSOURI, Plaintiff, *v.* ALEXANDER J. P. GARES-CHÉ, Defendant.

*Constitution—Attorneys.*—The provisions of the new Constitution, Art. II., §§ 6, 9 & 3, which prohibit attorneys and counsellors-at-law from practising in the courts of this State until they have taken and filed the "oath of loyalty," so called, are not in conflict with the Constitution of the United States ; they do not impair the obligations of a contract, nor are they in the nature of an *ex post facto* law, nor an attainder.

At the calling of the State ex rel. Conrad v. Bernoudy, appealed from the St. Louis Circuit Court, Mr. Garesché, as counsel for respondent, appeared prepared to argue the case. Upon inquiry from the court, whether he had complied with the rule adopted by the court and taken the oath of loyalty prescribed by the new Constitution, he replied that he had not. The court then refused to permit him to argue the cause. Mr. Garesché then filed his written motion for leave to appear in the cause as counsel for respondent, upon a retainer for his services, until the final decision of the case ; as also upon his right so to do, as being already an attorney and counsellor in the Supreme Court.

(*Motion to vacate order and judgment.*)

And now comes said Garesché *in propria persona*, and moves the court to vacate the order and judgment so made distraining him as a practitioner; because it impairs the contract existing between him and his clients ; because the order of the court is illegal, unjust, and oppressive; because the oath is one prohibited by the Federal Constitution, and therefore this court should not enforce it, and its rule

State v. Garesché.

made at opinion of court and its judgment against said Garesché is therefore illegal; because the order that said oath must be taken is otherwise illegal and unconstitutional, and in violation of the Constitution of the United States.

(Signed,)      ALEXANDER J. P. GARESCHÉ.

HOLMES, Judge, delivered the opinion of the court.

Alexander J. P. Garesché, *in propria persona*, files his motion to vacate the order of the court debarring him as a practitioner.  It is not very clear on what precise grounds of law this motion is based.  We gather, however, that the mover contends that he has some right to practise as an attorney and counsellor-at-law in this court, which is protected by the Constitution of the United States from the operation of the Constitution of this State.  He asks that the rule of court (which prohibits attorneys and counsellors from practising in this court without having taken the oath of loyalty as required by the Constitution of this State), and also the decision or order made in pursuance thereof, refusing him permission to appear and be heard as counsel for the defendant in the case of the State v. Bernoudy, should be vacated, for the reason that they are prohibited by the Federal Constitution as impairing the obligation of contracts.  It appears to be claimed, also, that the requirement of this oath is unconstitutional, as being an *ex post facto* law.

Our attention is not called to any other specific clause in the Constitution of the United States, which is supposed to be violated.  Nor does it very distinctly appear, in reference to the clause concerning the obligation of contracts, whether the party here rests his objection upon his license to practise generally, or upon his particular engagement as counsel in the case named, or upon both; but we are of opinion that neither the one nor the other is a contract within the meaning of the clause in question.

Originally, no person could appear in court by attorney; but under certain ancient statutes attorneys were admitted to practise by the courts, and were in all points officers of the courts, having many privileges.  They had to be examined

by the judges for admission, and none were admitted but "such as were virtuous, learned, and sworn to do their duty." Counsellors (barristers. or sergeants) were admitted as such only upon sixteen years' standing ; were also bound by a solemn oath to do their duty, and were of that honorable state and degree that they practised for honor merely ; could maintain no action for fees, and accepted them, not as a salary or hire, but as an honorary gratuity ; and if guilty of deceit, collusion, or any misdemeanor in practice, they were liable to be stricken from the rolls, "and punished by imprisonment and perpetual silence in the courts." (3 Black. Com. 25; 1 Bac. Abr. 423.)

In nearly all the States of the Union, the subject of attorneys and counsellors is regulated by statutes, which require in general an examination for admission, a good moral character, and a solemn oath to support the Constitution and laws of the country, and faithfully to perform their duties—(1 Dane's Abr. 294) ; and under the statutes of this State, no person can practise law as an attorney and counsellor, in any court of record, without a license from a court or judge; nor be licensed without producing satisfactory testimonials of good moral character, undergoing a strict examination as to his qualifications, and taking an oath to support the Constitution of the United States and of this State, and faithfully to demean himself in practice to the best of his knowledge and ability. (R. C. 1855, p. 278.)

The new Constitution now requires of all attorneys and counsellors (as well those already admitted as those hereafter to be admitted), that they shall take an additional oath of loyalty before being permitted to practise in the future. We are unable to discover where in this oath, required of the party here, anything more than he was legally and morally bound to have done by the obligation of the oath which he took when admitted to practice. The acts referred to in the oath, as specified in the 3d section (Art. II.), are such only as, if done, might amount to treason, or to evidence (more or less direct and conclusive) either of treason, or of

disloyalty and disaffection to the Government. Can it be too much to say, that this party, by virtue of the oath he had taken, was under legal and moral obligations not to be guilty of either? It is true, any person who has been guilty of treason may be tried in due course of law as for the criminal offence; and any attorney may be prosecuted and disbarred, under the act regulating Attorneys, for any of the offences therein mentioned. The provisions of the Constitution concerning the oath of loyalty do not in any way modify these offences, nor change the punishment or the evidence required. Bills of attainder assume judicial magistracy and declare persons to be guilty of high crimes, punishable with death, attainder of inheritable blood, or confiscation of property, without judicial trial; or (as bills of pains and penalties), in like manner, declare them guilty of lesser offences, and inflict some milder degree of punishment—(2 Sto. Const. § 1344; 2 Woods, § 371–87; Calder v. Bull, 3 Dalt. 386; Gaines v. Buford, 1 Dana, 509); and *ex post facto* laws relate to laws of a criminal nature only. The prohibitions of the Constitution of the United States extend to bills of attainder and to every law whereby an act is declared a crime, and made punishable as such, when it was not a crime when done; or whereby the act, if a crime, is aggravated in enormity or punishment, or whereby different or less evidence is required to convict an offender than was required when the act was committed. (Sto. Const., Abr., § 679.) The party here is not declared guilty, nor made punishable, without trial, for any crime or offence whatever; nor even subjected to trial for any past offence of a criminal nature; much less to any aggravated punishment, or to any rules of evidence different from those which before existed.

Nor does the Constitution make any act criminal which was innocent when done. We do not see that, in any just and proper legal sense, the requirement of this oath can be said to be a bill of attainder or an *ex post facto* law. (Smith's Comm. § 230–31.) Nor can it be said to be a retrospective

law, as being retroactive in its operation; for it neither takes away nor impairs any civilly vested rights, nor creates any new obligation, duty, or disability, in respect of any past contract, vested right, or other civil transaction. (1 Kent's Com. 451 & 501; Smith's Com. § 149 *a.*, § 156.) The upshot, scope and effect of it would seem to be clearly this only, that a new oath of loyalty shall now be taken by all attorneys and counsellors as further and additional evidence or testimonial of good moral character, and of that fidelity to the Constitution and laws, which public policy, the public safety and the public good always have demanded of these sworn officers of the courts as trusted ministers in the temples of Justice; and that all those who cannot, or will not, give this evidence of trustworthiness in an honorable profession which derives its peculiar powers and privileges from the laws of the State, must be content for the present to be silent in the courts. All questions respecting the wisdom, policy, expediency, or natural justice, of the measure, belong exclusively to the law-giving body, or to their constituencies, the people, and not to the judiciary, which concerns itself only with the constitutional and legal validity of the law when made, and with the proper interpretation, construction and application of it. (1 Kent's Com. 494; Bennett v. Boggs, 1 Baldw. 74; Providence Bk. v. Billing, 4 Pet. 563; Cochran v. Van Surly, 20 Wend. 381; Smith's Com. § 134.)

Attorneys and counsellors are not only officers of the courts, but in some sense public officers, though not strictly State officers.

Matters of internal government, and public offices held within a State and for State purposes, or as a part of the civil institutions of the State, with or without salary or fees from the State, are subject to ordinary legislation as the public judgment and good government may demand, and they are not embraced in the word "contract" within the meaning of the Federal Constitution.—Dartmouth Coll. v. Woodward, 4 Wheat. 627 (Marshall, C. J.), 693 (Story, J.); Butler v.

Pennsylvania, 10 How. (U. S.) 402; Conner v. City of New York, 1 Seld. 285; Benford v. Gibson, 15 Ala. 521; Sto. Const. (Abr.) § 707, 708; Smith's Comm. § 262.

In the case of Simmons v. State (12 Mo. 268), it was held that a license to practise law was a mere naked grant of a privilege, and neither a franchise (in the sense of property) nor a contract; and in the "Matter of Oaths by Attorneys," 20 J. R. 492 (in which attorneys were required to take an oath, under the statutes of New York, that they had never been engaged in a duel), it was said to be a bare franchise or liberty; and in Austin v. State (10 Mo. 591), this court (Napton, J.) went so far as to declare, that the State has the power to abolish or restrict any trade or profession as they may think expedient, or to require any qualifications of age, length of residence, moral character, &c., which in their wisdom they may think proper; and that when the Legislature does not prohibit the calling or profession altogether, but "allows it to be exercised by certain persons, it then becomes a municipal privilege, which may be only exercised by those persons who have the qualifications and pursue the steps required by law." These expressions where used in a case where an act of the Legislature, restricting the exercise of the party's calling, was called in question as being repugnant to that clause in the Federal Constitution which declares that citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States; but we think they have equal force here upon the questions of the general right of the party to pursue the practice of his profession by virtue of his former license.

As touching the matter of his particular engagement, it does not appear that he had any other contract than a general employment as counsel in a certain controversy in all the phases which it might assume in the courts, for as much as his services might be worth. On this it may be sufficient to add, that if the State has seen fit, in the exercise of its legislative control over the public offices and municipal in-

State v. Garesché.

stitutions of the State, or over the trades and callings carried on within the State, to require qualifications for the practice of the legal profession which he no longer possesses, or requisitions with which he is unwilling to comply, that is rather to be considered as his own fault or misfortune than as the consequence of any unconstitutionality in the law. He may be entitled to compensation for the service actually rendered; and if he has been paid in advance for services which he cannot render, the case of Benton v. Craig (2 Mo. 198) would seem to be good authority to the point, that the other party could recover back the amount in an action for money had and received. We do not see that there is any contract here which comes within the protection of the Constitution of the United States.

Motion overruled. Judge Lovelace concurs; Judge Wagner not sitting.