**STATE of Missouri, Appellant,**

v.

**Joey D. HONEYCUTT, Respondent.**

No. SC 92229.

Supreme Court of Missouri,
En Banc.

Nov. 26, 2013.

Opinion Modified on Court's Own
Motion Dec. 24, 2013.

412

Daniel N. McPherson, Attorney General's Office, Jefferson City, T. Todd Myers, Greene County Prosecuting Attorney's Office, Springfield, for the State.

Margaret M. Johnston, Public Defender's Office, Columbia, Christopher S. Hatley, Attorney, Springfield, for Honeycutt.

ZEL M. FISCHER, Judge.

This Court holds article I, section 13's ban on the passage of any law retrospective in its operation does not apply to criminal laws. Section 571.070.1(1)[1] is a criminal law, and as such, the circuit court erred in dismissing the charge against Honeycutt on the ground that the statute was unconstitutionally retrospective as applied to him. The circuit court's judgment is reversed, and the case is remanded.

**Factual and Procedural Background**

The facts are undisputed. The State charged Honeycutt as a prior and persistent offender with two counts of stealing a firearm in violation of § 570.030 and one count of unlawful possession of a firearm in violation of § 571.070.1(1). Section 571.070.1(1) provides that a person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and that person has been convicted of any felony under the laws of this state. The third count in the indictment alleges that between November 22, 2010, and March 31, 2011, Honeycutt knowingly possessed a shotgun and that he had been convicted of felony possession of a controlled substance in September 2002.

Honeycutt filed a motion to dismiss the indictment's third count, challenging the constitutional validity of § 571.070 as applied to him. Honeycutt alleged that, when he was convicted of possession of a controlled substance, that conviction did not prohibit him from owning a firearm under the version of § 571.070 in effect at that time. Section 571.070 in effect at the time made it a crime for persons convicted of a "dangerous felony" to possess a concealable firearm.[2] Possession of a controlled substance did not fall into the "dangerous felony" category. Section 556.061(8), RSMo 2000.

The legislature amended § 571.070 in 2008 to make it a crime for a person convicted of *any* felony to possess any firearm.[3] Honeycutt argued that the 2008 amendment, as applied to him and his 2002 conviction, violates the ban on retrospective laws contained in article I, section 13 of the Missouri Constitution by imposing a "new duty or obligation" upon him. The State argued that the constitutional ban on retrospective laws is limited to civil rights and remedies and has no application to criminal laws.

■ The circuit court sustained Honeycutt's motion to dismiss the third count, finding § 571.070 unconstitutional as applied to Honeycutt. The State appeals. The circuit court's judgment granting Honeycutt's motion to dismiss the third count on constitutional grounds is a final judgment from which the State may appeal. *State v. Brown*, 140 S.W.3d 51, 53 (Mo.

---

1. All statutory references are to RSMo Supp. 2010 unless otherwise indicated.

2. Section 571.070.1(1), RSMo 2000 stated, "A person commits the crime of unlawful possession of a concealable firearm if he [or she] has any concealable firearm in his [or her] possession and [he or she] has pled guilty to or has been convicted of a dangerous felony, as defined in section 556.061, RSMo...."

3. Section 571.070.1(1), RSMo Supp.2010 states, "A person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and [s]uch person has been convicted of a felony under the laws of this state...."

banc 2004).[4] This Court has exclusive appellate jurisdiction over cases involving the validity of a statute. Mo. Const. art. V, § 3.

### Standard of Review

■ Whether a statute is constitutional is an issue of law that this Court reviews *de novo*. *State v. Vaughn*, 366 S.W.3d 513, 517 (Mo. banc 2012). "Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision." *Id.* "The person challenging the validity of the statute has the burden of proving the act clearly and undoubtedly violates the constitutional limitations." *Id.*

### The Prohibition Against Any Law Retrospective in its Operation Does Not Apply to Criminal Laws

The United States Constitution[5] and the constitutions of every state prohibit ex post facto laws. Only a handful of state constitutions, however, prohibit the passage of laws that are retrospective in their operation.[6] The Missouri Constitution has included such a provision since 1820.[7] Article I, section 13 currently provides: "That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted."

To enforce this constitutional limitation, the Court must first decide what is meant by law "retrospective in its operation." Honeycutt argues that the phrase should be given its plain meaning and applied in the broadest sense, affecting—and potentially invalidating—both criminal and civil statutes. The State argues that the phrase had a technical legal meaning when adopted that limited its reach only to statutes affecting civil rights and remedies. Therefore, the State argues that § 571.070 cannot be a law "retrospective in its operation" because it is a criminal law. After reviewing the structure of article I, section 13, the debates of this State's constitutional conventions, the historical legal definition of the phrase, and the relevant authorities from Missouri and other jurisdictions, this Court holds that the constitutional prohibition against enacting a law "retrospective in its operation" applies only to laws affecting civil rights and remedies and was never intended to apply to criminal statutes.

■ This Court's primary goal in interpreting Missouri's constitution is to

---

4. The circuit court's dismissal without prejudice of Honeycutt's indictment based on its unconstitutional application of § 571.010 had the practical effect of terminating the litigation and constituted a final and appealable judgment. *State v. Davis*, 348 S.W.3d 769, 770 n. 3 (Mo. banc 2011).

5. U.S. Const. art. I, sec. 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed."); U.S. Const. art. I, sec. 10, cl. 1 ("No state shall ... pass any ... ex post facto law....")

6. *See* Colo. Const. art. II, sec. 11; Ga. Const. art. I, sec. 1, para. X; N.H. Const. Part I, art. 23; Ohio Const. art. II, sec. 28; Tenn. Const. art. I, sec. 20; and Tex. Const. art. I, sec. 16.

7. *See* Mo. Const. art. XIII, sec. 17 (1820) ("That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, can be passed, nor can the person of a debtor be imprisoned for debt after he shall have surrendered his property for the benefit of his creditors in such manner as may be prescribed by law."); Mo. Const. art. I, sec. 28 (1865) ("That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, can be passed."); Mo. Const. art. II, sec. 15 (1875) ("That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be passed by the General Assembly.").

"ascribe to the words of a constitutional provision the meaning that the people understood them to have when the provision was adopted." *Farmer v. Kinder,* 89 S.W.3d 447, 452 (Mo. banc 2002). This Court must assume that every word contained in a constitutional provision has effect, meaning, and is not mere surplusage. *City of Arnold v. Tourkakis,* 249 S.W.3d 202, 206 (Mo. banc 2008). When words do not have a technical or legal meaning, "they 'must be given their plain or ordinary meaning unless such construction will defeat the manifest intent of the constitutional provision.' " *Mo. Prosecuting Attorneys v. Barton Cnty.,* 311 S.W.3d 737, 742 (Mo. banc 2010). "The grammatical order and selection of the associated words as arranged by the drafters is also indicative of the natural significance of the words employed" and "[t]o this extent the intent of the amendment's drafters is influential." *Id.* at 742. Weight should be given to cases interpreting constitutional provisions at or near the time the constitution was adopted because contemporaries of the drafters had the greatest opportunity to fully understand the meaning and intent of the language used. *Ogden v. Saunders,* 25 U.S. 213, 290, 12 Wheat. 213, 6 L.Ed. 606 (1827) (Johnson, J., concurring); 16 Am.Jur.2d *Constitutional Law* § 89 (2013).

█ Article I, section 13 clearly contains four separate provisions prohibiting the enactment of: (1) ex post facto laws; (2) laws impairing the obligation of contracts; (3) laws retrospective in their operation, or; (4) the making of any irrevocable grant of special privileges or immunities. Honeycutt argues that "retrospective" should be given its plain, literal meaning. But to read "retrospective" in the manner Honeycutt urges would swallow the ex post facto clause of article I, section 13, which applies solely to criminal laws. If the prohibition against any law "retrospective in its operation" is also read to apply to criminal laws, then the ex post facto clause of article I, section 13 would be mere surplusage. This Court is not inclined to give the provision such a meaning. Instead, the retrospective laws clause should be given a meaning separate and apart from the ex post facto provision. This is achieved by recognizing that both the phrase "ex post facto" and the prohibition against any retrospective law had established technical legal meanings when that language was added to our Constitution.[8]

The debates of the constitutional convention of 1875 support this conclusion. During the debate, one delegate proposed a general limitation on the passage of retrospective laws, which he argued would curb the powers of the state and encompass the prohibition against ex post facto laws contained in the federal constitution. *Debates of the Missouri Constitutional Convention 1875,* vol. II at 370 (Isidor Loeb & Floyd C. Shoemaker, eds., State Historical Soc'y of Mo., 1938). This delegate argued vehemently that the general "prohibition to pass a retrospective act without qualification necessarily carries with it the prohibition to pass a retrospective criminal law; that is to say an ex post facto law[,]" as well as the prohibition to pass a law that impaired the obligation of a contract or a law that defeated a vested civil right or remedy. *Id.* at 405–10. This

---

**8.** The scope of the prohibition against laws retrospective in their operation as compared with the prohibition against laws that impair contract obligations is not before the Court in this case. But it is sufficient to point out that, just as the United States Constitution prohibited ex post facto laws, it also prohibited laws that impaired contract obligations. There is no doubt that to give meaning to the prohibition on laws retrospective in operation, it necessarily applied to civil rights and remedies in addition to contract rights.

delegate firmly believed the previous drafters of the provision used more words than necessary. *Id.* at 410–11.

While this delegate attempted to limit the language of this constitutional provision to a blanket prohibition against the passage of all retrospective laws, other delegates wanted to expand the language of the provision by defining the term "retrospective." One delegate proposed that the provision include language that a retrospective law was one that impaired any vested right, created a new obligation, or attached a new disability. *Id.* at 376. Yet another delegate wanted to limit the legislature's authority to pass retrospective laws that would be curative or confirmatory in nature. *Id.* at 398.

All of these proposals to amend, redefine or clarify were rejected, and the delegates voted to retain the same language used by the drafters of the 1865 Constitution. These rejections indicate that the drafters understood the prohibition against laws "retrospective in their operation" already had an accepted technical legal meaning. The established understanding of the term retrospective was made particularly clear by one of the delegates of the convention. That delegate stated: "A retrospective law, as is well known to every lawyer on this floor. . . . It means the same thing in respect to civil affairs that an *ex post facto* law does in respect to criminal matters." *Id.* at 382. Adding the definition to the provision was unnecessary because its meaning was already established and eliminating other phrases ran the risk of losing protections the citizens of Missouri already enjoyed.

This Court's interpretation of article I, section 13 just two years after the voters adopted the 1875 constitution confirms this conclusion. *Ex parte Bethurum* confront-

ed the question of whether the constitution's prohibition against laws retrospective in their operation applied to criminal laws. The Court expressly held that a retrospective law "is one which relates exclusively to civil rights and remedies." 66 Mo. 545, 550 (1877). In *Bethurum*, this Court construed article II, section 15 of the 1875 Missouri Constitution, which contained language nearly identical to the current provision in article I, section 13. *Bethurum* involved a challenge to an amendment to Missouri's habeas corpus act. The amendment gave the court power to correct a judgment in a criminal case that misstated the length of a sentence or place of incarceration. *Id.* at 547–48. Bethurum challenged the amendment on the grounds that it: (1) was an ex post facto law; (2) was a law retrospective in its operation; and (3) sought to expand the original jurisdiction of the Court. *Id.* at 547. This Court, at a time almost contemporaneous with ratification of the 1875 constitution, rejected all three challenges.

*Bethurum* began the analysis by recognizing that "[t]he terms *ex post facto* and retrospective, as employed in statutes and constitutions, had acquired a definite, legal meaning, long before the adoption of our constitution." *Id.* at 548. This Court rejected the ex post facto challenge on the grounds that the law did not meet the test for such challenges set out by the United States Supreme Court in *Calder v. Bull*, 3 U.S. 386, 3 Dall. 386, 1 L.Ed. 648 (1798). *Id.* at 548. *Bethurum* cited the discussion in *Calder* that explained ex post facto was a technical legal term relating exclusively to crimes, punishments, and criminal procedure. *Id.* at 548–49. The law at issue in *Bethurum* was not ex post facto because, though it altered criminal procedures, it did not fit into the narrow definition of what constitutes an ex post facto law.[9] *Id.* at 549.

9. Specifically, the Court stated that the statute at issue:

In examining the "retrospective law" challenge, *Bethurum* explained:

A "law retrospective in its operation," as the phrase is employed in our bill of rights, is *one which relates to civil rights, and proceedings in civil cases.* The inhibition as to retrospective laws, in regard to criminal transactions, was full and complete in the inhibition against the passage of *ex post facto* laws, but as there was nothing in the federal constitution to prohibit the Legislature from enacting retrospective laws, and doubts have been expressed as to the power of the Legislature to pass such laws, when the State constitution did not forbid it, that clause was inserted in our constitution to make certain what was, before, in some doubt, and is to be found in the constitutions of several other states, while others do not contain any such provision. A retrospective law, as the phrase is employed in our constitu-

tion, is one which relates *exclusively* to civil rights and remedies.

*Id.* at 550 (emphasis added). This Court noted that the constitution's use of both the phrase "ex post facto" and the term "retrospective" indicated that each must have a meaning distinct from the other. *Id.* at 552. Giving "retrospective" its literal or dictionary meaning also would encompass "ex post facto" laws. This would "attribute to the members of the [constitutional] convention ignorance of the meaning of the words employed by them, which we are not inclined to credit." *Id.* Accordingly, *Bethurum* holds that **"there can be no doubt that the phrase 'law retrospective in its operation,' as used in the bill of rights, has no application to crimes and punishments, or criminal procedure, and [the statute at issue] is neither an** *ex post facto* **law nor a law retrospective in its operation."** [10] *Id.* at 552–53 (emphasis added).[11]

did not make an act criminal which was innocent before its passage; it did not make the crime, of which defendant was found guilty, greater than when he committed it; it did not change the punishment and inflict greater punishment than the law annexed to the crime when he committed it; nor did it alter the legal rules of evidence, and make less or different testimony than the law required when he committed the offense, sufficient to convict him.
*Bethurum*, 66 Mo. at 549.

10. Honeycutt asserts that this statement is dicta because the Court also stated, "It is a less difficult task to determine whether the [statute] is a retrospective law, or not, than to lay down a rule aptly and exactly to govern all cases, and we shall make no such attempt." *Bethurum*, 66 Mo. at 553. The Court, however, determined that the statute was not a retrospective law because it applied to "crimes and punishments, or criminal procedure" and, therefore, was not within the scope of the prohibition against retrospective laws. *Id.* 552–53. Just because the holding was "less difficult" does not mean it was *dicta.*

11. Though not cited in *Bethurum*, this Court had implied that the retrospective clause was understood to have no application to criminal laws twelve years earlier in *State v. Garesche*, 36 Mo. 256 (1865) *overruled in part on other grounds by Murphy & Glover Test–Oath Cases*, 41 Mo. 339, 362 (1867). In *Garesche*, an attorney was disbarred from practice for not taking an oath required by the constitution of 1865. *Id.* at 257. When evaluating the law, this Court held that the law was not criminal and, therefore, not an ex post facto law. *Id.* at 259. The Court also found that the law was not retrospective in its operation stating, "Nor can it be said to be a retrospective law, as being retroactive in its operation; for it neither takes away nor impairs any *civilly* vested rights, nor creates any new obligation, duty, or disability, in respect of any past contract, vested right, or other *civil* transaction." *Id.* at 259–60 (emphasis added). Despite the absence of a citation to *Garesche* in *Bethurum*, this obvious understanding of the retrospective clause persisted.

As further support for its holding, the *Bethurum* Court cited a number of cases from other jurisdictions examining similar state constitutional provisions.[12] For example, in *Rich v. Flanders,* the Supreme Court of New Hampshire concluded that the word "retrospective"

> as used in our bill of rights, and as generally used in a legal sense, *is a technical term, not to be understood in a literal sense,* but one that must receive, and has received, a legal interpretation.... So retrospective laws are technically held to relate to civil causes only, and there is a farther [sic] limitation here—it is only such as affect vested rights that are technically retrospective; while all laws affecting the remedy, however retrospective they may be in the literal sense of that word, are not held to be retrospective according to the legal interpretation of that term.

39 N.H. 304, 319–20 (1859).[13]

Decided shortly after *Bethurum,* in *Denver, S.P. & P.R. Co. v. Woodward,* the Colorado Supreme Court construed their constitutional provision, "That no ex post facto law, nor law impairing the obligation of contracts or retrospective in its operation ... shall be passed by the general assembly." *Woodward,* 4 Colo. 162, 163 (1878). The court determined its constitutional provision contained three distinct prohibitions. Further, relying on the analysis from *Rich,* authority from two other jurisdictions and this Court's opinion in *Hope Mutual Insurance Co. v. Flynn,* 38 Mo. 483 (1866), it stated, "[t]he term retrospective was intended to apply to laws which could not properly be said to be included in the description of ex post facto, or laws impairing the obligation of contracts." *Id.* at 164.

*Bethurum*'s holding—that the term retrospective had a settled technical legal meaning before its inclusion in Missouri's constitution—finds further support in early legal scholarship. In *Bethurum* this Court specifically stated, "The terms *ex post facto* and retrospective, as employed in statutes and constitutions, had acquired

---

**12.** The concurring opinion, questions the authority on which *Bethurum* relies. Contrary to the concurring opinion's assertion that "*Bethurum* simply assumed that the *ex post facto* ban applied to criminal laws and so the retrospective law ban must apply only to civil laws," the *Bethurum* Court based its opinion on the definition of the terms at issue as they were understood at the time, the language of the constitution, the drafters' motives for including the clause, and the decisions of other state high courts interpreting similar provisions. The *Bethurum* Court undoubtedly was also presented with the relevant caselaw of the time. Notably, in the 57 years between the adoption of the original retrospective clause in the 1820 constitution and the decision of *Bethurum* in 1877 not one opinion of this Court applied the retrospective clause to a criminal law. On the other hand, the Court used the provision on numerous occasions to invalidate laws relating to civil rights and remedies. Moreover, this Court decided *Hope Mut. Ins. Co. v. Flynn,* 38 Mo. 483

(1866), a seminal case concerning the definition of the retrospective clause within one year of the adoption of the 1865 constitution. The Court then decided *Bethurum* only two years after the adoption of the 1875 constitution. Though *Bethurum* did not cite *Hope,* Judge Wagner, the author of *Hope,* was still on the bench when *Bethurum* was decided. Those contemporaries of the constitution undeniably have claims to the deference of this Court because those jurists would have been more knowledgeable about the intention of the drafters and the accepted legal meaning of the phrase at the time of its adoption.

**13.** *Bethurum* looked to two other cases from outside Missouri, another from New Hampshire and one from Texas. Both cases held that the term "retrospective laws"—or some version thereof—could not be taken to have its literal meaning. *Woart v. Winnick,* 3 N.H. 473, 481 (1826); *De Cordova v. City of Galveston,* 4 Tex. 470, 473 (1849).

a definite, legal meaning, long before the adoption of our constitution." 66 Mo. at 548. Theodore Sedgwick,[14] in his treatise on the interpretation of statutes noted that early legal scholars such as Sir Francis Bacon and Henry de Bracton defined a retrospective law as, in Sedgwick's words, "a statute which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already past." Theodore Sedgwick, *A Treatise on the Rules which Govern the Interpretation and Construction of Statutory and Constitutional Law 160* (2d ed. 1874). Significant for purposes of the resolution of this issue is that Sedgwick supports this definition—which was adopted by this Court sometimes without attribution—solely with citation to cases involving civil rights and remedies. *Id.* at 160–172; *see also Squaw Creek Drainage Dist. v. Turney,* 235 Mo. 80, 138 S.W. 12, 16 (1911).

As early as 1798, the Supreme Court of the United States ascribed distinct, technical legal meanings to the phrases "ex post facto laws" and "retrospective laws." In the seminal case of *Calder v. Bull,* 3 U.S. 386, 3 Dall. 386, 1 L.Ed. 648 (1798), cited by the *Bethurum* Court, the Supreme Court stated the ꓹ "ex post facto" literally means "that a law shall not be passed concerning, and after the fact, or thing done, or action committed." *Calder,* 3 U.S. at 390. The Supreme Court then outlined the distinction between the two terms, stating, "[T]he true distinction is between ex post facto laws, and retrospective laws. Every ex post facto law must necessarily be retrospective; but every retrospective law is not an ex post facto

law: the former, only, are prohibited [by the United States Constitution]." *Id.* at 391. The Supreme Court understood retrospective laws as those that "take[ ] away, or impair[ ], rights vested, agreeably to existing laws." *Id.* The Supreme Court stated that such laws are "generally unjust" and, typically, a law should have no retrospect, but there may be situations in which such a retrospective law would be beneficial to the community or to a given individual. *Id.* Ex post facto laws, on the other hand, applied to criminal laws only, and only in four distinct situations. *Id.*

Recognizing the general injustice inherent in many retrospective laws coupled with the absence of any explicit provision in the federal constitution prohibiting their enactment, some states adopted state constitutional provisions to ensure state legislatures could not pass retrospective civil laws. Sedgwick, *supra,* at 166. When Missouri adopted its first constitution in 1820 it included, in article XIII, section 17, a provision stating "[t]hat no ex-post fact law, nor law impairing the obligation of contracts, or retrospective in its operation, can be passed, nor can the person of a debtor be imprisoned for debt after he shall have surrendered his property for the benefit of his creditors in such manner as may be prescribed by law." Every constitution of this state since has included a similar provision.

Until very recently, every decision of this Court involving the prohibition against laws retrospective in their operation applied that provision solely to laws involving civil rights and remedies. In *Hope Mut. Ins. Co. v. Flynn,* one of this Court's seminal cases interpreting this provision, this

---

14. Sedgwick's treatise is cited as authoritative in many of this Court's opinions throughout the mid-to late–1800s. *E.g., State ex rel. McNamee v. Stobie,* 194 Mo. 14, 92 S.W. 191, 213 (1906); *Ewing v. Hoblitzelle,* 85 Mo. 64, 71 (1884); *City of St. Louis ex rel. Creamer v. Clemens,* 52 Mo. 133, 143 (1873); *Hope Mut. Ins. Co. v. Flynn,* 38 Mo. 483, 484 (1866); *Stewart v. Griffith,* 33 Mo. 13, 33 (1862).

Court concluded that a law of evidence that completely eliminated a party's defense to a civil action could not be applied retrospectively because to do so would violate the constitution's prohibition of laws retrospective in their operation. 38 Mo. 483, 484–85 (1866). In *Hope*, an insurer sued a policy holder for unpaid premiums. *Id.* at 483. The parties had entered into an insurance agreement in 1860. *Id.* In 1863, the Missouri legislature passed a law that made a certificate signed by a company's president, stating that a party owes a debt to the company, conclusive evidence of such indebtedness so long as the corporate seal was affixed to the document. *Id.* Having such a document in its possession, the insurer argued that the policy holder could not present the defense that no debt was owed. *Id.* Using Sedgwick's accepted definition of a retrospective law, this Court held that "it is not within the constitutional competency of the Legislature to annul by statute any legal ground on which a previous action is founded, or to create a new bar by which such action may be defeated." *Id.* at 484. This Court found that the law could not be applied in the case because it took away the policy holder's ability to assert a defense that was available to it when it entered into the policy. *Id.* The ability to assert a defense was a right that had vested in the policy holder prior to the enactment of the statute, and the Court held the law was an invalid attempt to alter retrospectively the private parties' civil rights and remedies. *Id.*

In *Barton County v. Walser*, this Court reaffirmed the definition of retrospective laws in *Hope Mutual Insurance*. 47 Mo. 189, 201 (1871). *Barton County* involved a statute that declared all deeds to certain land granted by the county courts of Missouri valid deeds. *Id.* at 199. Barton County sued to recover certain land from a purchaser, arguing that the deeds were invalid and that the statute at issue violat-

ed the constitution's ban on retrospective laws. *Id.* at 194, 200. This Court stated, "As between individuals, the Legislature has no power to interfere and declare an act or deed valid which was previously void." *Id.* at 201. But the Court held that the same was not true as between the State and a county. *Id.* at 203. Because the new law did not interfere with the vested right of a citizen, and only made valid the transaction between a political subdivision of the state and a citizen of the state, the statute did not violate the ban on retrospective laws. *Id.* at 205.

In *City of St. Louis ex rel. Creamer v. Clemens*, this Court invalidated a city ordinance that sought to impose a new tax assessment for work previously performed by a city contractor. 52 Mo. 133 (1873). In 1867, the St. Louis City Council passed an ordinance authorizing the construction of sewers and establishing the manner in which the cost of construction should be assessed against the property owners. *Id.* at 135–36. Under the ordinance, a city contractor constructed sewers for the city and an assessment was made. *Id.* at 136. In 1870, the city enacted a new ordinance allowing for a re-assessment of the sewer construction. *Id.* The city then issued a new tax bill to James Clemens under the 1870 statute and later sued to collect on that bill. *Id.* The parties agreed that the tax bill was entirely for work done under the 1867 ordinance and that the bill was for a larger assessment permitted only under the 1870 ordinance. *Id.* at 140. This Court, citing both Sedgwick's definition of retrospective laws and *Hope Mutual Insurance Co.*, held that the city could not collect the tax bill. *Id.* at 145. The Court held that the liability created by the 1870 ordinance was a new obligation and liability that could not be imposed on work previously performed. *Id.* To do so would violate the constitution's prohibition

against laws retrospective in their operation. *Id.*

More recently, in *State ex rel. Koster v. Olive,* this Court held that a civil law requiring dam owners to obtain permits for their dams was not retrospective in operation. 282 S.W.3d 842, 848 (Mo. banc 2009). The dam at issue had been constructed in 1974, and the statutes requiring a registration permit were enacted in 1979. *Id.* at 846. In 2001, the dam's owners asserted that they should not be required to register their dam under the statute because the legislature enacted the statute after the dam's construction, and as applied to them, the permitting requirements were unconstitutionally retrospective in their operation. *Id.* at 848. This Court held—using a derivation of Sedgwick's definition of retrospective laws—that, because the permitting statutes neither took away a vested right nor imposed a new obligation, duty, or disability on the dam's owners, they did not operate retrospectively. *Id.* Rather, this Court held, the "dam's present use and its present ability to hold back substantial amounts of water is the issue." *Id. Olive* is consistent with *Hope, Bethurum,* and other cases because the law did not alter civil rights or remedies.

In *Klotz v. St. Anthony's Medical Center,* this Court invalidated a civil law that established a new cap on non-economic damages as applied to a couple whose claim had accrued prior to the enactment of the law. 311 S.W.3d 752 (Mo. banc 2010). In 2006, the couple sued a number of medical providers for medical malpractice and loss of consortium for conduct occurring in 2004. *Id.* at 758. In 2005, the legislature amended a statutory non-economic damages cap to reduce the total amount of recoverable damages. *Id.* The amendment stated it applied "to all causes of action filed after August 28, 2005." *Id.* at 758–59. After trial, a jury found for the couple and awarded damages in excess of the amended cap, which the circuit court reduced. *Id.* at 759. The couple timely challenged the constitutional validity of the amendment and, on appeal, the case was reversed noting the "underlying repugnance to the retrospective application of laws." *Id.* This Court held, "It is settled law in Missouri that the legislature cannot change the substantive law for a category of damages after a cause of action has accrued." *Id.* at 760. Changing the substantive law would have eliminated the couple's right to recovery up to the previous cap amount that vested at the time the cause of action accrued.

Furthermore, Missouri courts have—on multiple occasions—expressly reaffirmed the proposition that the retrospective clause of article I, section 13 does not apply to criminal laws. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 34–35 (Mo. banc 1982) ("A retrospective law, as that term is used in the Missouri Constitution, is one which impairs existing vested civil rights."); *State ex rel. Sweezer v. Green,* 360 Mo. 1249, 232 S.W.2d 897, 899–902 (1950), *overruled in part on other grounds by State ex rel. North v. Kirtley,* 327 S.W.2d 166 (Mo. banc 1959) (finding that a statute was civil and, therefore, not an ex post facto law, and that the same law was not retrospective); *Clark v. Kansas City, St. L. & C.R. Co.,* 219 Mo. 524, 118 S.W. 40 (1909) ("[T]he retrospective laws forbidden by [the Constitution] are laws impairing existing vested civil rights."); *Westerman v. Supreme Lodge K.P.,* 196 Mo. 670, 94 S.W. 470, 489 (1906); *Gladney v. Sydnor,* 172 Mo. 318, 72 S.W. 554, 556 (1903), *overruled in part on other grounds by Bushnell v. Loomis,* 234 Mo. 371, 137 S.W. 257 (1911) ("The term 'retrospective in their operation,' as used in our Bill of Rights, is one which relates to civil rights and proceedings in civil causes. *Ex parte Bethurum,* 66 Mo. 545. Hence the well-settled

rule deduced from all the authorities is that 'acts of the Legislature are not to be considered as retrospective, unless they impair rights that are vested, because most civil rights are derived from public laws.' ")

In the face of the long-standing technical legal meaning of these terms and *Bethurum*'s necessary and express holding, Honeycutt argues that this Court implicitly overruled *Bethurum* in two recent cases: *R.L. v. Dep't of Corrections*, 245 S.W.3d 236 (Mo. banc 2008), and *F.R. v. St. Charles Cnty. Sheriff's Dep't*, 301 S.W.3d 56 (Mo. banc 2010). In *R.L.*, this Court invalidated as violative of article I, section 13's prohibition of laws retrospective in their operation a law that prohibited certain sex offenders from living within 1,000 feet of a school or child-care facility. *R.L.*, 245 S.W.3d at 237–38. In *F.R.*, this Court invalidated as violative of the same provision an amended version of the law invalidated in *R.L.* and a law that imposed several restrictions on what certain sex offenders could do on Halloween. *F.R.*, 301 S.W.3d at 66. Each of the invalidated laws carried a criminal penalty for failure to comply with their provisions.[15] Honeycutt essentially asserts that these two cases overruled *Bethurum sub silentio* and extended the application of the prohibition against laws retrospective in their operation to criminal laws without discussion, analysis or citation.

 Generally, this Court presumes, absent a contrary showing, that an opinion of this Court has not been overruled *sub silentio*. *See Badahman v. Catering St. Louis*, 395 S.W.3d 29, 37 n. 10 (Mo. banc 2013). *Sub silentio* is defined as "without notice being taken or without making a particular point of the matter in question."

*Webster's Third New International Dictionary* 2279 (1976). "If the majority chooses to overrule [a case] it is far preferable to do so by the front door of reason rather than the amorphous back door of *sub silentio*." *Keller v. Marion Cty. Ambulance Distr.*, 820 S.W.2d 301, 308 (Mo. banc 1991) (Holstein, J., dissenting). This presumption can be traced, at least in part, to the doctrine of *stare decisis*. "The doctrine of *stare decisis*—to adhere to decided cases—promotes stability in the law by encouraging courts to adhere to precedents." *Med. Shoppe Int'l, Inc. v. Dir. of Revenue*, 156 S.W.3d 333, 334–35 (Mo. banc 2005). Under the doctrine of *stare decisis*, decisions of this Court should not be lightly overruled, especially when "the opinion has remained unchanged for many years." *Sw. Bell Yellow Pages, Inc. v. Dir. Of Revenue*, 94 S.W.3d 388, 391 (Mo. banc 2002).

 Importantly, "[t]he maxim of stare decisis applies only to decisions on points arising and decided in causes" and does not extend to mere implications from issues actually decided. *Broadwater v. Wabash R. Co.*, 212 Mo. 437, 110 S.W. 1084, 1086 (1908). To assert that a decision has been overruled *sub silentio* is the same as to assert that the decision has been overruled by implication. This Court's presumption against *sub silentio* holdings, therefore, is based not only on the general preference that precedent be adhered to and decisions be expressly overruled, but also because the implicit nature of a *sub silentio* holding has no *stare decisis* effect and is not binding on future decisions of this Court. *R.L.* and *F.R.* did not expressly address whether article I, section 13 applies to criminal

---

**15.** Violation of the residence restriction was a class D felony for the first violation and a class B felony for any subsequent violation. Violation of the Halloween restrictions was a class A misdemeanor.

laws, and this Court must presume those opinions made no decision on the issue.

In addition to the usual presumption against assuming a case was overruled *sub silentio*, a careful review of these cases demonstrates that this Court—without consideration—presumed the laws invalidated in *R.L.* and *F.R.* to be civil in nature. In *R.L.*, this Court stated, "The constitutional bar on retrospective *civil laws* has been a part of Missouri law since this State adopted its first constitution in 1820." 245 S.W.3d at 237 (emphasis added). The Court, without any briefing to suggest a contrary analysis, stated that "[t]he same long-standing principles applied in [*Doe v.*] *Phillips* apply in this case." *Id.* In *Doe v. Phillips*, this Court held that Missouri's sex offender registration requirement was civil in nature and operated retrospectively in violation of article I, section 13. 194 S.W.3d 833, 850 (Mo. banc 2006). Based on the issues raised and discussed on the briefs of the parties, *R.L.* held that the residency requirement at issue there retrospectively imposed a new civil obligation in violation of the constitution. *Id.* at 237–38.

 Similarly, the opinion in *F.R.* (concerning residency requirements and various Halloween restrictions) begins with the statement, "These two cases are simply cases that can be resolved by applying article I, section 13 in the same way as it was applied in *Doe v. Phillips* and *R.L.*" 301 S.W.3d at 61. As already noted, in both of these cases the Court stated that it was applying article I, section 13 to a *civil law*. The issue concerning whether article

I, section 13 applied to criminal laws was not briefed by the parties in *R.L.* and *F.R.*, and the Court made no formal analysis concerning the nature of the laws before it. The determination of whether this Court's treatment of the statutes in *R.L.* and *F.R.*, as civil in nature, was accurate is not before the Court in this case.[16] It is sufficient, for the purposes of today's decision, simply to acknowledge that the Court treated the laws as civil. These two cases, therefore, do not stand for the proposition that the "retrospective laws" clause of article I, section 13 applies to criminal laws.

While this Court is not critical of counsel for the defendant making the argument that *R.L.* and *F.R.* reversed *Bethurum sub silentio*, a fair reading of *R.L.* and *F.R.* demonstrates they do not hold that article I, section 13's prohibition against laws retrospective in their operation applies to criminal laws. Neither case made an express holding to that effect, and the language used and authorities cited in each case demonstrate that the Court presumed the particular laws invalidated were civil laws without consideration or analysis of the issue.

This Court reaffirms the long-standing precedent that the separate and distinct phrases of article I, section 13 had technical legal meanings at the time they were adopted and still do. As such, with the issue fully briefed and argued, this Court now holds the phrase "ex post facto law" applies exclusively to criminal laws and the phrase law "retrospective in its operation" does not apply to criminal laws.

---

16. No case should be reversed unless the legally dispositive issue is necessary to the resolution of the pending case. To do otherwise could result in an under-informed or under analyzed holding. Very recently, in *State v. Davis*, 348 S.W.3d 768 (Mo. banc 2011), this Court did not permit the State to make a claim at the first instance on appeal that the prohibition against laws retrospective in their operation did not apply to criminal laws. This Court, as it does here, will analyze whether a law is criminal to determine whether the prohibition against retrospective laws even applies only when properly preserved and presented on appeal.

### Section 571.070 is a Criminal Law

 Though the discussion up to this point has gone to great length to highlight an important distinction between the "ex post facto" and the "retrospective law" provisions of article I, section 13, that is just the starting point of the constitutional analysis. Under both provisions, it is essential that the analysis begins with a determination of whether the law under examination is civil or criminal. If the law relates to civil rights or remedies, this Court then must determine whether the law is invalid because it is retrospective in its operation. On the other hand, if a criminal law is at issue, then article I, section 13's prohibition against ex post facto laws is applicable.

In order to determine which provision of article I, section 13 determines the law's validity, this Court applies the two-part test utilized by the United States Supreme Court in *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), and adopted by this Court in *R.W. v. Sanders*, 168 S.W.3d 65 (Mo. banc 2005), and *Phillips*, 194 S.W.3d 833.

 In *Smith*, the United States Supreme Court found that an Alaska version of "Megan's Law," which required sex offenders to register with the State, was a civil statute and was not subject to the ex post facto prohibitions of the United States Constitution. *Smith*, 538 U.S. at 105–06, 123 S.Ct. 1140. The Court utilized a two-part framework for ascertaining whether a statute is civil or criminal in nature. *Id.* at 92, 123 S.Ct. 1140. Under that framework,

> We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we

must further examine whether the statutory scheme is " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil' "

*Id.* (citations omitted). "Whether a statutory scheme is civil or criminal 'is first of all a question of statutory construction.' " *Id.*

 . "The courts 'must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " *Id.* at 92–93, 123 S.Ct. 1140. An express legislative finding is one obvious indicator of legislative intent, but "[o]ther formal attributes of a legislative enactment, such as the manner of its codification or the enforcement procedures it establishes, are probative of the legislature's intent." *Id.* at 94, 123 S.Ct. 1140.

 If a statute is determined to create a civil regulatory scheme, the Court must then examine whether the civil scheme was "so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Id.* at 92, 97, 123 S.Ct. 1140 (quotation marks omitted). To analyze the effects of the regulation, the United States Supreme Court examined whether, in its necessary operation, the regulatory scheme: (1) has been regarded in our history and traditions as a punishment; (2) imposes an affirmative disability or restraint; (3) promotes the traditional aims of punishment; (4) has a rational connection to a nonpunitive purpose; or (5) is excessive with respect to that purpose. *Id.* at 97, 123 S.Ct. 1140.

Following *Smith*, this Court applied the two-part analysis to Missouri's sex offender registration statutes in the ex post facto context. In *R.W.*, 168 S.W.3d 65, this Court, using the *Smith* analysis, held that Missouri's sex offender registration statute was civil and non-punitive and, therefore,

did not violate the ex post facto clause. In *Phillips*, this Court, relying on the determination made in *R.W.*, concluded that, because such registration laws were civil and retrospective in their application, they violated article I, section 13's retrospective laws provision. *Id.* at 852.

▮▮▮ To avoid any future confusion, the courts of this State, when faced with a state constitutional challenge based on article I, section 13, should employ the two-part analysis utilized in *Smith* and *R.W.* to determine the character of the particular law as the first step in analyzing whether a law violates the either "ex post facto" provision or the "retrospective laws" provision of article I, section 13.[17] In Missouri, if the law is deemed "civil" under the appropriate challenge, the court will need to analyze whether the law is retrospective in its operation. Simply because a law is civil and looks backward, does not make it retrospective in its operation. Therefore, the two-part analysis will indicate whether a particular provision is appropriate, but will not necessarily end the inquiry entirely if a statute is challenged under both provisions of article I, section 13.

▮▮▮ With these concepts in mind, this Court now turns to the two-part test to determine if § 571.070.1(1) affects civil rights and remedies or if it relates to crimes or criminal punishment. The first part of the test requires the Court to "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Smith*, 538 U.S. at 92, 123 S.Ct. 1140. In making this determination, the Court should "consider the statute's text and its structure to determine the legislative objective." *Id.* at 93, 123 S.Ct. 1140.

Section 571.070 provides:

1. A person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and:

(1) Such person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony; or

(2) Such person is a fugitive from justice, is habitually in an intoxicated or drugged condition, or is currently adjudged mentally incompetent.

2. Unlawful possession of a firearm is a class C felony.

3. The provisions of subdivision (1) of subsection 1 of this section shall not apply to the possession of an antique firearm.

Section 571.070.1(1) appears on its face to be a criminal statute. The statute uses the language of a criminal statute, providing a requisite mental state—"knowingly"—and a penalty for violation of the statute—"class C felony." Section 571.070 is part of the criminal code. Section 556.011, RSMo 2000. And it is written in the style of all other provisions of the criminal code.

Moreover, "[o]ther formal attributes of a legislative enactment, such as the manner of its codification or the enforcement procedures it establishes, are probative of the legislature's intent." *Id.* at 94, 123 S.Ct. 1140. Section 571.070.1(1) appears in Title XXXVIII of the Revised Statutes of Missouri titled "Crimes and Punishment; Peace Officers and Public Defenders." Chapter 571 is titled "Weapons Offenses." All of these factors demonstrate the legislature's clear understanding that § 571.070.1(1) is a criminal statute.

---

17. Although the test is the same, it is important to point out a distinction when using this test to determine whether a law solely violates the United States Constitutional prohibition against ex post facto laws. In the federal analysis, if a law is determined to be civil, the inquiry ends because the federal constitution does not contain an express prohibition against "retrospective laws."

Even if § 571.070 appeared on its face to be a civil statute, the second part of the two-part test demonstrates that § 571.070 is "so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Id.* at 92, 123 S.Ct. 1140. In the second part of the two-part analysis, this Court considers whether, in its necessary operation, the regulatory scheme: 1) has been regarded in our history and traditions as a punishment; 2) imposes an affirmative disability or restraint; 3) promotes the traditional aims of punishment; 4) has a rational connection to a non-punitive purpose; or 5) is excessive with respect to that purpose. *Id.* at 97–104, 123 S.Ct. 1140.

Here, the statute is clearly of the variety that has been regarded in our history and traditions as punishment. It seeks to punish anyone who previously has been convicted of a felony and who is in possession of any firearm and is designed specifically to criminalize that conduct.

Turning to the second factor, § 571.070 imposes a direct and affirmative restraint on a certain class of defendants. It prohibits anyone who has been convicted of a felony from knowingly possessing a firearm.

Turning to the third factor, § 571.070 also promotes the traditional aims of punishment. "Two traditional aims of punishment are deterrence of future crimes and retribution for past crimes." *R.W.*, 168 S.W.3d at 69. Section 571.070 serves both of these aims of punishment. This statute serves to deter crime by threatening prison time for engaging in the prohibited conduct. It is retributive for much the same reason: undesirable conduct is punished by imprisonment.

Turning to the fourth and fifth factors, no non-punitive purpose has been advanced by any party. Therefore, these factors need not be considered.

Because the proper analysis demonstrates that § 571.070.1(1) is a criminal statute, article I, section 13's prohibition against laws retrospective in their operation does not apply. This Court recently held that § 571.070 does not violate the ex post facto law provision of article I, section 13 of the Missouri Constitution in *State v. Harris*, 414 S.W.3d 447, 2013 WL 5460639 (Mo. banc 2013) (No. SC93170, decided October 1, 2013).

## Conclusion

This Court long ago concluded that the phrases "ex post facto" and law "retrospective in its operation" as employed in article I, section 13 have distinct, technical, legal meanings. Today, this Court reaffirms that conclusion and holds that the prohibition of laws retrospective in their operation does not apply to criminal laws. Because § 571.070 is a criminal statute, the circuit court erred in dismissing the third count of the indictment against Honeycutt on the grounds that the statute was unconstitutionally retrospective as applied to Honeycutt. The circuit court's judgment is reversed, and the case is remanded.

RUSSELL, C.J., BRECKENRIDGE and WILSON, JJ., concur.

STITH, J., concurs in separate opinion filed.

DRAPER and TEITELMAN, JJ., concur in opinion of STITH, J.

LAURA DENVIR STITH, Judge.

I write separately to note that I disagree with the majority's suggestion that the traditionally recognized meaning of the term "retrospective in operation" in article I, section 13 of Missouri's constitution necessarily was limited to civil matters. While *Ex parte Bethurum*, 66 Mo. 545, 550 (Mo.1877), so stated, it did so in reliance on authorities that simply did not directly address the issue.

Indeed, Missouri had adopted the current definition of "retrospective laws" at least twelve years prior to *Bethurum* in *State of Missouri v. Garesche,* 36 Mo. 256 (Mo.1865), *overruled in part on other grounds by Murphy & Glover Test–Oath Cases,* 41 Mo. 339, 362 (1867). In that case this Court held that the requirement that officeholders take a loyalty oath was not *ex post facto:* "Nor can it be said to be a retrospective law, as being retroactive in its operation, for it neither takes away nor impairs any civilly vested rights, nor creates any new obligation, duty or disability, in respect of any past contract, vested right or other civil transaction." *Id.* at 259–60. Similarly, *Hope Mutual Insurance Co. v. Flynn,* 38 Mo. 483, 484 (Mo. 1866), states, "A statute which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already past, is to be deemed retrospective or retroactive."

*Hope* cited to Theodore Sedgwick's 1857 *A Treatise on the Rules which Govern the Interpretation and Application of Statutory and Constitutional Law* as the source of this definition, but an even earlier reference can be found in the 1814 Justice Story opinion *Society for the Propagation of the Gospel v. Wheeler,* 22 F. Cas. 756, 767 (C.C.D.N.H.1814). In *Wheeler,* Justice Story held that, "Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective; and this doctrine seems fully supported by authorities." *Id.* I agree with the majority that this is and has been the settled meaning of the term—what the majority calls its "technical definition."

But this begs the question whether the prohibition against retrospective laws applies to retrospective criminal laws, for nothing in the definition of "retrospective" as set out in *Hope* or by Judge Story or Sedgwick explains why this settled "technical" meaning is limited to civil laws. Indeed, Justice Story says "every statute" that takes away rights or imposes new obligations or disabilities is retrospective, not "every *civil* statute." Similarly, James Kent's *Commentaries on American Law,* cited by *Garesche, supra,* as authority for the definition of "retrospective laws," states:

> *Ex post facto* laws relate to penal and criminal proceedings, which impose punishments or forfeitures, and not to civil proceedings, which affect private rights retrospectively. *Retrospective laws and state laws, divesting vested rights, unless ex post facto,* or impairing the obligation of contracts, do not fall within the prohibition contained in the Constitution of the United States, however repugnant they may be to the principles of sound legislation.

1 JAMES KENT, COMMENTARIES ON AMERICAN LAW 451 (8th ed. 1854) (emphasis added). This suggests that criminal laws can be retrospective yet not *ex post facto.*

Similarly, the authorities to which Story refers do not state that criminal laws that are not within the meaning of *ex post facto* cannot be otherwise retrospective. The principal authorities cited are the 1798 Supreme Court opinion *Calder v. Bull,* 3 U.S. 386, 3 Dall. 386, 1 L.Ed. 648 (U.S.1798), and the 1811 opinion of New York's highest court in *Dash v. Van Kleeck,* 7 Johns. 477 (N.Y.Sup.Ct.1811). *Calder,* of course, principally concerned a law that was *ex post facto* in its application. In distinguishing *ex post facto* from retrospective laws, *Calder* said, "Every ex post facto law must necessarily be retrospective; but every retrospective law is not an ex post

facto law. . . ." 3 U.S. at 391. This suggests that the term "retrospective" is not limited in scope to civil laws, as *ex post facto laws* are recognized as a form of retrospective law. As the ban on retrospective laws was intended to supplement the ban on *ex post facto laws*, which it concededly was, it makes far more sense to understand it to apply to any retrospective law not covered by the already existing ban on *ex post facto* laws.

Of course, it is true that most retrospective criminal laws already are prohibited by the ban on *ex post facto* laws. This may be the real reason why *Bethurum* simply assumed that the *ex post facto* ban applied to criminal laws and so the retrospective law ban must apply only to civil laws—*Bethurum* indicated that the framers of the Constitution surely would have wanted to avoid duplication. The supreme courts of the other states with similar provisions also have stated that it applies to civil cases only, albeit again without saying how the term acquired that limitation or what authority supports it.[1]

Yet, here, the majority says that the gun law at issue here is both retrospective and criminal but does not fall within the ban on *ex post facto* laws. This disproves its own premise and that on which *Bethurum* and similar authorities were based, for it is a criminal law not covered by the *ex post facto* ban. In any event, the majority's argument proves too much to the extent it says that interpreting the ban on retrospective laws to apply only to retroactive civil laws avoids redundancy, for the ban on retrospective civil laws clearly is redundant with the ban on laws impairing contracts. Such a ban on impairment of contracts has been a part of every Missouri constitution.

I nonetheless concur that this Court should interpret the term "retrospective laws" to apply only to civil laws or laws with a civil, regulatory effect. I do so because, even if the source of the limitation of the application of the retrospective laws limitation is unclear, the fact is that these are the only kinds of cases to which it has been applied. This may simply be because the prohibition on *ex post facto laws* is so broad that there just were no criminal cases not encompassed within the concept of *ex post facto* laws until the legislature began to adopt laws regulating and punishing the conduct of sex offenders.

Because of its consistent application only to civil cases for the nearly 200 years since this State's first constitution was adopted in 1820, I agree the term "retrospective in operation" during that period acquired a meaning that limits it to the civil context— what the state and the majority call its "technical meaning."

I also note that this limitation of "retrospective laws" to civil matters is consistent with this Court's application of the ban on retrospective laws in *Doe v. Phillips,* 194 S.W.3d 833, 837, 842 (Mo. banc 2006), *R.L. v. State of Missouri Department of Corrections,* 245 S.W.3d 236, 237 (Mo. banc 2008), and *F.R. v. St. Charles County Sheriff's Department,* 301 S.W.3d 56, 61 (Mo. banc 2010). *Doe* said that laws requiring offenders to register as sex offenders violated the constitutional prohibition on laws retrospective in operation because they imposed new obligations or new disabilities based solely on past conduct. *Doe,* 194 S.W.3d at 852. Similarly, the statutes at issue in *R.L.* and *F.R.* sought to regulate the actions of sexual offenders by punish-

---

1. *See, e.g., People v. Dist. Court,* 834 P.2d 181, 192–94 (Colo.1992) (en banc); *Evans v. State,* 252 Ga. 312, 314 S.E.2d 421, 428 (1984); *Ex parte Quarrier,* 4 W.Va. 210, 224 (W.Va.1870);

*Rich v. Flanders,* 39 N.H. 304, 320 (N.H. 1859), overruled on other grounds by *Caswell v. Maplewood Garage,* 84 N.H. 241, 149 A. 746, 753 (1930).

ing them for engaging in conduct—such as giving out Halloween candy or walking in parks or living in houses near parks—that is perfectly acceptable if performed by persons who are not sex offenders, and it was because of their regulatory effect that the laws addressed in those two cases were held invalid. *F.R.*, 301 S.W.3d at 58, 63–65; *R.L.*, 245 S.W.3d at 237–38.

In contrast, here, Mr. Honeycutt was convicted of carrying a gun in violation of an admittedly solely criminal law that prohibits persons who previously were convicted of particular crimes from carrying firearms. The law is not *ex post facto,* as it does not criminalize his conduct based solely on the existence of his prior conviction but rather does so based on his current and prospective carrying of a firearm. It therefore was his post-conviction conduct that resulted in his conviction. Accordingly, I concur.

