

# SUPREME COURT OF MISSOURI
## en banc

JOHN T. IMPEY,                                  )
                                                )
        Appellant,                          )
                                                )
v.                                              )      No. SC93698
                                                )
MISSOURI ETHICS COMMISSION, et al.,             )
                                                )
        Respondents.                        )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Jon E. Beetem, Circuit Judge

*Opinion issued June 24, 2014*

John Impey appeals the circuit court's dismissal of his petition for review of a decision by the Missouri Ethics Commission ("MEC"). Impey alleges that the circuit court erroneously determined that he failed to exhaust his administrative remedies. Impey argues that § 105.961, RSMo 2000,[1] violates article V, section 18 of the Missouri Constitution because it provides for review by the Administrative Hearing Commission ("AHC") before seeking judicial review of the MEC's determination. This Court holds

---

[1] Section 105.961 was amended in 2010 by Senate Bill 844. This Court declared that amendment unconstitutional in *Legends Bank v. State*, 361 S.W.3d 383 (Mo. banc 2012), as a violation of the original purpose provision of article III, section 21 of the Missouri Constitution. Both versions of the statute appear in the 2013 supplement to the revised statutes of Missouri. All references in this opinion are to RSMo 2000, which reflects the language of the statute that went back into effect following this Court's decision in *Legends Bank*. *See* Section 3.066, RSMo Supp. 2013.

that § 105.961 does not violate the Missouri Constitution and that Impey failed to exhaust all administrative remedies.  The judgment is affirmed.

**Factual and Procedural Background**

In August 2011, John Impey prepared and circulated, by hand and by mail, a number of pamphlets voicing his opposition to a ballot measure in Houston, Missouri. Shortly thereafter, the MEC received a complaint against Impey, alleging that Impey had violated the law by failing to place "Paid for by John Impey" on the pamphlets.  Pursuant to § 105.961, the MEC assigned the complaint to an investigator, who investigated the complaint and filed a report.  Based on this report, the MEC found that there were reasonable grounds to believe that Impey had violated the law, and the MEC scheduled a probable cause hearing.

Following the probable cause hearing, the MEC made a determination that probable cause existed to believe that Impey had violated § 130.031.8[2] in circulating his pamphlets.  Upon this determination, the MEC issued findings of fact, conclusions of law, and an order.  The first sentence of the MEC's findings stated, "This is a final decision and order of the Missouri Ethics Commission …."  The order contained two paragraphs.  The first stated that the MEC found probable cause that Impey violated the

---

[2] Section 130.031.8  provides, in relevant part:

> Any person publishing, circulating, or distributing any printed matter relative to any candidate for public office or any ballot measure shall on the face of the printed matter identify in a clear and conspicuous manner the person who paid for the printed matter with the words "Paid for by" followed by the proper identification of the sponsor pursuant to this section.

Section 130.031 was revised by the same senate bill that revised § 105.961.  Like § 105.961, when this Court held in *Legends Bank* that the bill was enacted in violation of the original purpose rule, the prior version of § 130.031 went back into effect.  The current version of § 130.031 appears in RSMo 2000.

law. The second stated, "The Missouri Ethics Commission orders a fee be imposed against Respondent Impey in the amount of $100 ...." Along with the findings of fact, conclusions of law, and the order, the MEC sent a notice to Impey stating:

> Pursuant to Section 105.961 RSMo, this action of the Missouri Ethics Commission may be appealed to the Administrative Hearing Commission. Such appeal shall be filed no later than fourteen days following receipt of actual notice of the commission's actions.

Rather than file his appeal with the AHC, Impey filed a petition for review in the circuit court. The MEC filed a motion to dismiss Impey's petition, alleging that Impey failed to exhaust his administrative remedies. Impey responded by alleging that the procedures outlined in § 105.961 were constitutionally invalid under article V, section 18 of the Missouri Constitution, which provides for direct judicial review of final administrative decisions. The circuit court granted the MEC's motion to dismiss, finding that Impey was not aggrieved by the MEC's probable cause determination and ruling that, to the extent Impey was entitled to any review, he had failed to exhaust his administrative remedies by failing to seek review by the AHC.

Impey appealed the circuit court's judgment to this Court, arguing that § 105.961 violates article V, section 18 of the Missouri Constitution.[3] This Court has exclusive appellate jurisdiction over cases involving the validity of a statute. Mo. Const. art. V, sec. 3.

---

[3] Impey also argues that § 130.031.8 violates his right to free speech under the United States and Missouri constitutions and that the MEC lacked statutory authority to impose a $100 fee. Because this Court holds the circuit court correctly dismissed Impey's petition, it is unnecessary to address these arguments.

## Standard of Review

Whether a statute is constitutional is an issue of law that this Court reviews *de novo*. *State v. Honeycutt*, 421 S.W.3d 410, 414 (Mo. banc 2013). "Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision." *Id.* "The person challenging the validity of the statute has the burden of proving the act clearly and undoubtedly violates the constitutional limitations." *Id.*

## Analysis

The MEC is an administrative body established by the General Assembly to administer and enforce a number of ethics-related laws, including those relating to lobbyists, public officials, and campaign finance disclosure. Section 105.955. To aid the agency in its enforcement of these laws, the MEC is authorized to receive complaints alleging that any law under its supervision has been violated. Section 105.957.

Section 105.961 sets out the procedure through which the MEC utilizes these complaints. First, upon receipt of the complaint, the MEC assigns the complaint to a special investigator. Section 105.961.1. The special investigator will then conduct an investigation and, within 180 days, file a report with the MEC. *Id.* The MEC reviews that report and makes one of three determinations: 1) that there are reasonable grounds for belief that a violation has occurred; 2) that no such reasonable grounds exist; or 3) that additional time is necessary to investigate. *Id.*

If the MEC has determined that reasonable grounds exist to believe a violation of law has occurred, then it takes one of two routes. First, if the MEC believes that there are

4

reasonable grounds that a violation of a criminal law has occurred, the MEC may refer the report to the appropriate prosecutor upon a vote of four members of the commission. Section 105.961.2. Second, if the MEC determines that there are reasonable grounds to believe that a violation of the law has occurred that is not a violation of criminal law, then the MEC will conduct a closed hearing to determine whether there exists probable cause that a violation has occurred. Section 105.961.3.

After the hearing, if the MEC determines by a vote of at least four commissioners that probable cause exists, then the MEC may take a number of actions. Pursuant to subsection 3 of § 105.961, if the commission determines that probable cause exists, "it may refer its findings to the appropriate disciplinary authority over the person who is the subject of the report." This provision applies almost exclusively to individuals who already hold elective or appointive office.[4]

Pursuant to subsection 4, if the MEC determines, by a vote of four or more commissioners, that referral for criminal prosecution or for action by a disciplinary authority is not appropriate, then the commission shall take any one or more of the following actions:

> (1) Notify the person to cease and desist violation of any provision of law which the report concludes was violated and that the commission may seek judicial enforcement of its decision pursuant to subsection 5 of this section;
> (2) Notify the person of the requirement to file, amend or correct any report, statement, or other document or information required by [the law], and that the commission may seek judicial enforcement of its decision pursuant to subsection 5 of this section; and

---

[4] The "appropriate disciplinary authority" for a particular individual is listed in subsection 7 of 105.961 and applies to members of the general assembly, judges, and statewide elected officials.

(3) File the report with the executive director to be maintained as a public document; or

(4) Issue a letter of concern or letter of reprimand to the person, which would be maintained as a public document; or

(5) Issue a letter that no further action shall be taken, which would be maintained as a public document; or

(6) Through reconciliation agreements or civil action, the power to seek fees for violations in an amount not greater than one thousand dollars or double the amount involved in the violation.

Section 105.961.4.

Subsection 5 of 105.961 gives the MEC the power to petition the courts to enforce its actions. Pursuant to subsection 5, the MEC may initiate formal judicial proceedings seeking to obtain an order requiring the subject of the complaint to: 1) cease and desist violation of the law; 2) pay any civil penalties authorized by law; 3) file any reports, statements, or other documents required by law; or 4) pay restitution for any unjust enrichment resulting from any violation of a criminal statute.

Subsection 5 of 105.961 also states that the subject of the complaint "may appeal any action of the Missouri ethics commission, other than a referral for criminal prosecution, to the administrative hearing commission." Subsection 5 requires the MEC to give "actual notice to the subject of the complaint of the proposed action as set out in this section." The subject of the complaint may then file an appeal to the AHC within 14 days of receiving notice. Such appeal stays the action of the MEC.

More succinctly, pursuant to § 105.961, the MEC serves to determine whether a particular complaint is worth pursuing. If the MEC finds probable cause to believe the law has been violated, it can refer the case to the appropriate disciplinary authority, which may then conduct its own proceedings. When no such disciplinary authority exists, the

6

MEC may take action on its own by notifying the alleged violator of its proposed action and then pursuing that action in the circuit court. If the alleged violator disputes the MEC's findings, he or she may appeal to the AHC.

It is § 105.961's provision for appeal to the AHC with which Impey takes issue. Impey alleges that the MEC's decision is a final decision and that subsection 5's requirement that Impey seek review by the AHC violates article V, section 18 of the Missouri Constitution. Article V, section 18 provides:

> All final decisions, findings, rules and orders on any administrative body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law.

The constitution does not define "direct review," but this Court has held that direct review means that a final decision of an administrative agency must be "immediately reviewable" by the appropriate court "without an intervening level of review." *Asbury v. Lombardi*, 846 S.W.2d 196, 201 (Mo. banc 1993).

Impey argues that by imposing AHC review prior to seeking review in the circuit court, § 105.961 denies *direct* review of the MEC's final decision. To support this argument, Impey cites *Asbury v. Lombardi*, which involved a corrections officer who had been terminated from his job. *Id.* at 198. The officer appealed the termination to the Personnel Advisory Board ("PAB"), which reinstated him. *Id.* The department of corrections then appealed to the AHC pursuant to statute, which reversed the reinstatement and remanded to the PAB. *Id.* After a second decision by both the PAB and the AHC, the officer petitioned the circuit court for a writ of prohibition, and the

7

circuit court declared the statute providing for review by the AHC unconstitutional. *Id.* At the time, the statute at issue, § 36.390.9, RSMo 1986, provided that "[d]ecisions of the personnel advisory board shall be final and binding subject to appeal by either party [to] … the administrative hearing commission or by the circuit court … but not both."

This Court found that § 36.390.9 violated article V, section 18's requirement that final agency proceedings be subject to direct judicial review. *Id.* at 202. In arriving at this conclusion, this Court held that the decision of the PAB was final for purposes of appellate review. *Id.* In so doing, the Court specifically pointed to the statute's use of the words "final and binding" to describe the PAB's decision. *Id.* The Court stated that the use of such words does not "indicate tentative, provisional, or contingent decisions that are subject to reconsideration." *Id.* The Court specifically noted that "[h]ad these words not been used, one might attempt to deem the PAB decision as an intermediary agency decision, being final only after AHC review." *Id.* The Court also stated that the option to appeal directly to the circuit court also indicated that the PAB's decision was final. *Id.* The Court then held that, because § 36.390.9 permitted an appeal of a final agency decision to the AHC, it violated article V, section 18's requirement of direct judicial review by imposing the potential for an "intervening" step. *Id.*

Impey argues that, like the PAB's decision in *Asbury*, the MEC's decision was final and, therefore, review by the AHC imposes an unconstitutional intervening step between the final agency decision and judicial review. However, a review of § 105.961 demonstrates that, unlike in *Asbury*, the MEC's decision was not "final and binding" for the purposes of appeal.

8

Quite to the contrary, the language of § 105.961 indicates that the legislature intended for the MEC's decision to be a tentative, contingent decision subject to further agency review. Notably, unlike the statute at issue in *Asbury*, § 105.961 does not expressly state that the MEC's decision is final and binding. This express designation was important to this Court's holding in *Asbury*, particularly because the Court noted that, absent such express designation, one might intimate that the agency decision was final "only after AHC review." *Asbury*, 846 S.W.2d at 202.

Such is the case with § 105.961. Section 105.961 expressly provides for review of the MEC decision by the AHC. The provision for such review indicates that the MEC's decision is subject to reconsideration and, therefore, not final. Moreover, unlike the statute in *Asbury*, § 105.961 does not expressly permit the MEC's decision to be appealed directly to the circuit court. Instead, § 105.961.5 specifically states that Impey "may appeal the action of the Missouri ethics commission … to the administrative hearing commission."

Despite Impey's arguments to the contrary, the provision in § 105.961 for appeal of the probable cause determination to the AHC actually indicates that the legislature intended for the AHC to render the agency's decision in the event that the subject of a complaint disagreed with the MEC's probable cause determination. The AHC exercises independent and impartial decision-making authority in disputes between agencies and those persons affected by their actions. *J.C. Nichols Co. v. Dir. of Revenue*, 796 S.W.2d 16, 20 (Mo. banc 1990). In that role, the AHC functions as a hearing officer and fulfils the same functions as any administrative hearing officer authorized to hear contested

9

cases within an agency. *Id.* The AHC "simply determines, on evidence heard, the administrative decision of the agency involved." *Id.* And here, that is precisely what the statute intends. Subsection 5 of § 105.961 permits the subject of any complaint received by the MEC to have the MEC's proposed action reviewed by the AHC, indicating that, if the AHC's jurisdiction is invoked, the MEC's decision does not become final until after AHC review.

Impey's argument that the MEC's decision is final does not rely on the language of the statute. Instead, Impey argues that the MEC's decision was a final decision for purposes of review because the first line of the order issued by the MEC after the hearing stated it was the "final decision and order of the Missouri Ethics Commission." Impey says the finality of the order is further evidenced by the order's imposition of a $100 fee against Impey. While potentially misleading, neither of these statements demonstrates that the MEC's decision after Impey's hearing is final for purposes of judicial review. To determine whether the MEC's decision is the final agency decision, this Court is guided by the intent of the legislature. As noted, the language of § 105.961 demonstrates that the legislature intended for the AHC to make the final determination when a dispute arises between the MEC and the subject of a complaint. Any statement in the MEC's order to the contrary does not control this Court's decision.

Having concluded that the legislature intended for the AHC's decision to be the final decision of the agency in a disputed § 105.961 proceeding, this Court also concludes that § 105.961's provision for appeal to the AHC does not conflict with article V, section 18. AHC review is not an "intervening step" between a final agency decision and judicial

10

review; rather, it is the final step in the agency's probable cause determination. Nothing in Missouri's constitution requires judicial review at every single step of an agency's decision-making process.

That is not to say that the MEC's probable cause determination is meaningless. Section 105.961.5 provides that an appeal must be "filed no later than fourteen days after the subject of the commission's actions receives actual notice of the commission's actions." If no appeal is taken within that time period, the probable cause determination of the MEC becomes binding.

But that does not mean that the subject of a complaint who fails to file an appeal with the AHC may petition the circuit court for review as soon as the MEC's decision becomes binding. Pursuant to § 536.100—the statute that implements the procedures for compliance with article V, section 18—in order for a party to a contested case to seek judicial review, the party must have exhausted all administrative remedies.[5] Under the

---

[5] Impey and the MEC dispute whether the proceeding conducted pursuant to § 105.961 is actually a "contested case." A "contested case" is defined as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." Section 536.010(4), RSMo Supp. 2013. Neither party argues that the MEC's proceedings provide insufficient formalities to constitute a contested case. Section 105.961.3 specifically states that the same procedures that govern many contested cases apply to the MEC's probable cause hearing, including notice, the opportunity to file responsive pleadings, and the presentation of witnesses. Instead the arguments focus on whether the MEC determined any "legal rights, duties, or privileges." Impey argues that the proceeding clearly is a contested case because the MEC holds a hearing and determines the rights, duties, or privileges of a person against whom a complaint has been filed. The MEC argues it is not a contested case in part because the decision is not final and because it only sets out the proposed action of the MEC and does not decide any rights, duties, or privileges of the subject of the complaint. For the purposes of this opinion, the Court assumes that the proceedings under § 105.961 constitute a "contested case." As noted, however, even assuming that the proceedings were a contested case, the MEC's decision was not a final decision and Impey failed to exhaust his administrative remedies. Furthermore, section 536.150, RSMo Supp. 2013, which governs judicial review in non-

procedures of § 105.961, applying for review by the AHC is an administrative remedy that must be exhausted before seeking judicial review. If the subject of the agency's actions—Impey in this case—does not apply for review with the AHC, he forfeits the right to challenge the agency's initial decision in any manner, including through judicial review. Because Impey did not appeal the MEC's probable cause determination to the AHC, he failed to exhaust his administrative remedies and, pursuant to § 536.100, may not seek judicial review of the determination.

Lastly, it is important to note what exactly the MEC determined. Following a hearing, the MEC determined that there was probable cause to believe that Impey violated one of the campaign finance disclosure laws. The MEC did not determine, however, that Impey actually violated the law. While the MEC stated that Impey owed a fee of $100, the MEC's only mechanism for enforcement of that fee is to file a civil action with the circuit court. Section 105.961.4 & .5. While Impey no longer may challenge the MEC's probable cause determination, nothing prevents him from asserting, *as a defense* to an MEC enforcement action brought in the circuit court, that he did not actually violate the law or that the MEC does not have the authority to impose a fee pursuant to § 105.961.4. Furthermore, nothing would prevent Impey from raising any additional claims that § 130.031.8 is constitutionally invalid as a defense to such a civil action filed in the circuit court by the MEC. Going forward, Impey is prevented only from disputing the MEC's probable cause determination.

contested cases, only applies when the administrative decision "is not subject to administrative review." Even assuming the probable cause determination resulted from a non-contested case, Impey was required by statute to seek AHC review.

12

**Conclusion**

Because § 105.961 does not violate article V, section 18, and because Impey failed to exhaust his administrative remedies, the circuit court's judgment is affirmed.

_____
Zel M. Fischer, Judge

All concur.