STATE of Missouri, EX REL., Ron CALZONE, Respondent,

v.

MISSOURI ETHICS COMMISSION, Appellant.

WD 80176

Missouri Court of Appeals,
Western District.

OPINION FILED: JULY 18, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied September 5, 2017

Application for Transfer Denied November 21, 2017

Allen Dickerson, Mexico, MO, Counsel for Respondent.

Craig Harrison Jacobs, Jefferson, MO, Counsel for Appellant.

Before Division Two: Edward R. Ardini, Presiding Judge, Karen King Mitchell, Judge, Anthony Rex Gabbert, Judge

Anthony Rex Gabbert, Judge

### Introduction

Missouri Ethics Commission (MEC) appeals the circuit court's Judgment granting a permanent writ prohibiting further action on a complaint filed with the MEC against Ron Calzone. The court held all prior action taken on the complaint to be void. MEC contends that the circuit court erred in its Judgment because a writ of prohibition is improper when used to disrupt an appeal of an administrative action to the Administrative Hearing Commission. MEC further contends that the court erred in its Judgment because the complaint filed with the MEC met the requirements of Section 105.957.2.[1] We reverse and remand with direction to quash the writ of prohibition.

### Factual and Procedural Background

On November 4, 2014, "Michael Dallmeyer, attorney" filed an Official Complaint Form with the MEC pursuant to Section 105.957. He alleged therein that, since 2000, Ron Calzone had continuously lobbied members of the Missouri General Assembly on behalf of Missouri First, Inc., a Missouri non-profit organization incorporated by Calzone in 2000, without filing legislative lobbyist registration forms and filing fees in violation of Section 105.473.1. Dallmeyer alleged that Missouri First's "Methods of Operation" state that " . . . Legislative lobbying and citizen involvement may be used to . . . influence public policy" and that Calzone had lobbied members of the General Assembly on issues relating to the right to bear arms, common core standards, property rights, and privacy of records. Dallmeyer alleged that, when testifying before legislative committees, Calzone identifies himself as director of Missouri First, and then declares that he is not a registered lobbyist and does not need to be because he does not get paid. Dallmeyer's complaint was accompanied by a transmittal letter stating, "I am submitting on behalf of our client, Missouri Society of Governmental Consultants" (MSGC) and advising that "public or media communications should be directed to MSGC, while any communications or questions from MEC should be directed to the undersigned."

On November 7, 2014, the MEC mailed a copy of the Official Complaint Form to Calzone and proceeded to review and conduct an investigation into Dallmeyer's complaint. On January 21, 2015, the MEC's investigator provided Calzone with a copy of the transmittal letter that had accompanied Dallmeyer's complaint. On April 21, 2015, the MEC filed a complaint with itself pursuant to Section 105.961.3 requesting a hearing and a determination of probable cause that Calzone had violated Sections 105.473.1 and 105.473.2. Upon

---

1. All statutory references are to the Revised Statutes of Missouri as supplemented until January 1, 2017, unless otherwise noted.

finding a reasonable basis for the complaint, the MEC scheduled a hearing for September 3, 2015.

On August 31, 2015, Calzone filed a motion to dismiss with the MEC alleging that Dallmeyer's allegations were "patently insufficient," that Calzone had not been "designated" as a lobbyist by Missouri First, and that Calzone's activities did not fit within the definition of "legislative lobbying." He further contended that, even if there was probable cause to find him a designated legislative lobbyist, the statutory definition of "designate" is unconstitutionally vague and the statute is unconstitutionally overbroad in reaching "lobbyists" who are not compensated for their advocacy. Calzone's Motion to Dismiss acknowledged that Dallmeyer represented MSGC, indicating that the complaint was brought by "Mr. Dallmeyer individually, as required by state law, and not by the Society." The motion further stated:

> Because it is a sworn complaint, presumably Mr. Dallmeyer has direct personal knowledge of the facts alleged therein and did not improperly rely upon hearsay in making his allegations. Respondent presumes that the Commission fully investigated the basis for Mr. Dallmeyer's sworn statement, but preserves the right to raise this issue should that belief prove to be misplaced.

On September 3, 2015, the MEC held a closed hearing on Dallmeyer's complaint. At that hearing Calzone's motion to dismiss was denied. The MEC called four witnesses and introduced eight exhibits, including Dallmeyer's complaint. Dallmeyer's complaint was offered without objection for the purpose of establishing "that a Complaint was filed with the Commission, that it was signed under oath and verified by the complainant." Calzone exercised his Fifth Amendment right against self-in-crimination, called no witnesses, and introduced one exhibit, the cover letter to Dallmeyer's complaint.

On September 11, 2016, the MEC issued its Findings of Fact, Conclusions of Law, and Order against Calzone finding probable cause that he violated Sections 105.473.1 and 2. The Order requires Calzone to register as a lobbyist and file all required reports, cease and desist from attempting to influence legislation until after filing an annual lobbyist registration and other required reports, and pay a $1,000 fine.

On September 25, 2015, Calzone filed a Petition for Review with the Administrative Hearing Commission (AHC) under Section 105.961.5. The MEC filed an answer to that Petition on October 28, 2015. On December 18, 2015, Calzone filed a Motion for Decision on the Pleadings. The MEC filed its opposition to that motion and the AHC heard oral argument regarding that motion. On December 28, 2015, the MEC served its First Set of Interrogatories Directed to Petitioner Calzone. On February 3, 2016, the MEC filed a motion to file an amended Answer and submitted a proposed Amended Answer.

On February 5, 2016, the AHC issued an order denying Calzone's Motion for Decision on the Pleadings. The Order stated, in relevant part:

> Both parties continue to provide exhibits outside the original pleadings that are not in the form of admissible evidence and cannot be considered by this Commission. Therefore, we request the parties to file motions for summary decision, and, we issue a scheduling order therefore.... Regulation 1 CSR 15-3.446(4) allows us to grant a decision on the pleadings 'based solely on the complaint and the answer.' Here, the parties continue to provide exhibits and argu-

ments. Therefore, we deny Calzone's motion for decision on the pleadings. As the parties had agreed that a hearing was unnecessary, the Order provided a scheduling order for the parties to submit motions for summary decision, and asked the parties to focus on whether the MEC's finding of probable cause should be reversed based on Calzone's three legal arguments in his motion for decision on the pleadings: 1) Dispute of MEC's jurisdiction over Calzone; 2) Dispute of Calzone's self-designation as a lobbyist; and 3) Dispute as to whether monetary expenditures must be made solely to legislators.

On February 24, 2016, the MEC served a Notice of Deposition on Missouri First, Inc., seeking to take the deposition of its corporate designee on March 8, 2016. Calzone subsequently filed a Motion for Protective Order against the MEC's discovery requests. On or about March 4, 2016, Calzone filed a Motion for Summary Decision with the AHC. On April 8, 2016, the AHC issued an Order denying Calzone's motion for protective order and granting, in part, the MEC's motion to compel discovery.

On April 14, 2016, Calzone filed a Petition for Writ of Prohibition with the Cole County Circuit Court alleging that the court's intervention was necessary because the MEC and AHC had no jurisdiction to act on Dallmeyer's complaint against Calzone because it had been filed on behalf of a non-natural person and Section 105.957.2 requires all complaints such as Dallmeyer's to be filed by a "natural person." On April 19, 2016, the Circuit Court issued Preliminary Orders in Prohibition against the AHC and Commissioner Sreenivasa Dandamudi. On April 26, 2016, the AHC issued an Order acknowledging the Preliminary Order in Prohibition, suspending deadlines previously imposed, and stating no further action would be taken on any motions until ordered by the court.

On September 23, 2016, the Circuit Court issued a Judgment making permanent its preliminary writs of prohibition based on finding "the complaint filed with the Missouri Ethics Commission was not filed by a natural person, but by an entity by its agent (notwithstanding the fact that the agent was a natural person)," declaring void "all actions taken on the complaint," and prohibiting the MEC and the AHC "from taking any further action on that complaint." MEC appeals.

### Point I

■ ▪MEC contends in its first point on appeal that the circuit court erred in issuing its Judgment prohibiting the AHC from reviewing Calzone's appeal of the MEC's Order because a writ for prohibition under Section 530.010, et seq., is improper when used to disrupt a proper appeal of an administrative action to the AHC under Section 105.961.5, in that the AHC had proper jurisdiction to review the proceedings held by the MEC, regardless of whether the MEC acted without proper authority. We agree.

■ We review the issuance of a writ of prohibition for an abuse of discretion. *State ex rel. Cass County, Missouri v. Mollenkamp*, 481 S.W.3d 26, 29 (Mo. App. 2015). "The writ of prohibition is an extraordinary remedy to be used with great caution and forbearance and only in cases of extreme necessity." *Id.* "A court may issue a writ of prohibition when the facts and circumstances of the case demonstrate unequivocally that an extreme necessity for preventative action exists." *Id.* "Two requirements must occur simultaneously before the issuance of such a writ: (1) a showing must be made that the court exceeded its jurisdiction; and (2) the remedy of appeal must not be available to the relator. Where there exists an adequate remedy by appeal, prohibition will not lie." *Missouri Dept. of Social Services v. Ad-*

*ministrative Hearing Com'n*, 826 S.W.2d 871, 872-873 (Mo. App. 1992).

The essential function of prohibition is to correct or prevent an inferior court or agency from acting without or in excess of its jurisdiction. Prohibition cannot be used as a substitute for an appeal. Because prohibition is a powerful writ, directing the body to cease further activities, its use has been limited to three, fairly rare, categories of cases. Prohibition lies where (1) a judicial or quasi-judicial body lacks personal jurisdiction over a party or lacks jurisdiction over the subject matter it is asked to adjudicate; (2) a lower tribunal lacks the power to act as contemplated; and (3) a litigant may suffer irreparable harm or where an important question of law decided erroneously would otherwise escape review on appeal and the aggrieved party may suffer considerable hardship and expense as a consequence of the erroneous decision. If an adequate remedy of appeal exists, prohibition will be denied.

*Mollenkamp*, 481 S.W.3d at 29 (internal quotation marks and citations omitted).

Calzone argued in his Petition for Writ of Prohibition that the MEC never had jurisdiction to act on Dallmeyer's complaint nor, by extension, did the AHC. He argued that because Section 105.957.2 requires all complaints regarding the requirements imposed on lobbyists under Sections 105.470 to 105.478 to be filed only by a "natural person," and the complaint against Calzone was filed by an attorney representing a corporation, the MEC and AHC never acquired jurisdiction. The circuit court agreed with Calzone in issuing its permanent writ.

Subject matter jurisdiction is a matter of a court or agency's authority to render a judgment in a particular category of case. *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009). The MEC and AHC are creatures of statute

and have only such authority as is granted by the legislature. *Schrock v. Gan*, 494 S.W.3d 631, 633 (Mo. App. 2016).

Section 105.955.14(1) grants the MEC jurisdiction to receive, review, and investigate complaints such as the one made against Calzone. It states:

14. The [MEC] shall have the following duties and responsibilities relevant to the impartial and effective enforcement of sections 105.450 to 105.496 and chapter 130, as provided in sections 105.955 to 105.963:

(1) Receive and review complaints regarding alleged violation of sections 105.450 to 105.496 and chapter 130, conduct initial reviews and investigations regarding such complaints as provided herein; refer complaints to appropriate prosecuting authorities and appropriate disciplinary authorities along with recommendations for sanctions; and initiate judicial proceedings as allowed by sections 105.955 to 105.963.

Pursuant to Section 105.957.1(1) "[t]he [MEC] *shall receive any* complaints alleging violation of the provisions of ... [t]he requirements imposed on lobbyists by sections 105.470 to 105.478[.]" (Emphasis added). Thereafter, "[u]pon receipt of a complaint *as described by section 105.957*, the [MEC] shall assign the complaint to a special investigator, who may be a commission employee, who shall investigate and determine the merits of the complaint." § 105.961.1 (Emphasis added).

Thus, it is the MEC's statutory obligation to receive any complaint making allegations such as those in Dallmeyer's complaint against Calzone which alleged violations of the statutory requirements imposed on lobbyists. After receipt of any such complaint, the MEC must "conduct [an] initial review" of the complaint to determine if it is within Section 105.957's

guidelines. It is only after the MEC determines that a complaint within statutory guidelines has been received that the MEC moves forward with investigating the merits of the complaint. Hence, while Section 105.957.2 requires a complaint to include certain information or to be made in a particular form, including that "[c]omplaints filed with the commission shall be in writing and filed only by a natural person,"[2] these requirements represent statutory limitations on what complaints may move forward for investigation but do not deprive the MEC of jurisdiction to review a complaint for statutory compliance. The MEC's determination as to statutory compliance is subject to review by the AHC.

Section 105.961.5 provides, in relevant part, that "[t]he subject of the complaint may appeal the action of the [MEC], other than a referral for criminal prosecution, to the [AHC]." The AHC's subsequent decision on that appeal may then be appealed to the circuit court pursuant to Section 536.100. Section 536.100 provides that "[a]ny person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a

contested case, whether such decision is affirmative or negative in form, shall be entitled to judicial review thereof[.]" As relevant here, pursuant to Section 536.140.2(2), the scope of the court's inquiry may include a determination of whether the agency acted in excess of statutory authority or jurisdiction. Thereafter, "[a]ppeals may be taken from the judgment of the court as in other civil cases." § 536.140.6

Here, pursuant to Section 105.957.1(1), the MEC received Dallmeyer's complaint alleging a violation of the statutory requirements imposed on lobbyists. Because the MEC assigned Dallmeyer's complaint to an investigator who investigated its merits, we presume that the MEC first concluded that the complaint was compliant with Section 105.957.[3] That conclusion, however, was subject to review by the AHC. In appealing the MEC's decision on the merits of the complaint, Calzone challenged formally for the first time the MEC's "jurisdiction" to investigate the complaint's allegations, contending that the complaint had been filed on behalf of a "non-natural person."[4] The AHC was

**2.** Additional complaint guidelines under Section 105.957.2 include that the "complaint shall contain all facts known by the complainant that have given rise to the complaint," that the "complaint shall be sworn to, under penalty of perjury, by the complainant," and that "[n]o complaint shall be investigated unless the complaint alleges facts which, if true, fall within the jurisdiction of the commission." Additionally, no complaint shall be investigated which concerns alleged criminal conduct wherein the statute of limitations on such conduct has already expired. § 105.957.3. Further, no complaints shall be investigated that concern alleged non-criminal conduct occurring more than two years prior to the complaint. *Id.* Additionally, if a complaint alleges misconduct on the part of a candidate for public office, it will not be accepted by the commission within sixty days prior to the primary election at which the

candidate is running for office and until after the general election. *Id.*

**3.** We note that Calzone also presumed that the complaint had been filed pursuant to statutory guidelines. After the MEC found a reasonable basis for the complaint and scheduled a hearing, Calzone filed his August 31, 2015, Motion to Dismiss wherein he stated that the complaint was brought by "Mr. Dallmeyer individually, as required by state law, and not by the Society." Calzone further presumed that Dallmeyer had direct knowledge of the facts alleged and that the MEC had fully investigated the basis for the sworn statement, but "preserve[d] the right to raise this issue should that belief prove to be misplaced."

**4.** At a September 3, 2015, hearing on Dallmeyer's complaint, in closing argument Calzone prefaced his defenses with, "This is a case where on the face of the complaint a non-natural person filed a complaint in clear

poised to, address this claim when its review was cut short by the circuit court's writ prohibiting the AHC "from taking any further action on that complaint."[5]

 "The AHC exercises independent and impartial decision-making authority in disputes between agencies and those persons affected by their actions." *Impey v. Missouri Ethics Com'n*, 442 S.W.3d 42, 47 (Mo. banc 2014). Section 105.961.5 permits the subject of any complaint received by the MEC to have the MEC's proposed action reviewed by the AHC. *Id.* If the decision of the MEC is not appealed to the AHC, then the MEC's determinations become binding. *Id.* However, if the MEC's decision is properly appealed to the AHC, the MEC's decision does not become final until after AHC review. *Id.* Pursuant to Section 536.100, the subject of a complaint to the MEC must exhaust all administrative remedies before petitioning the circuit court for relief. *Id.* "Under the procedures of Section 105.961, applying for review by the AHC is an administrative remedy that must be exhausted before seeking judicial review." *Id.* at 47-48.

Here, the MEC's decision was not yet final when the circuit court issued its writ and the AHC, not the circuit court, was the proper authority to review that decision. We find that Calzone had not exhausted his administrative remedies prior to seeking the writ of prohibition and, because an appeal was available to Calzone after exhaustion of those remedies, it was

an abuse of discretion for the circuit court to issue a writ prohibiting the AHC from performing its statutorily mandated review of Calzone's appeal of the MEC decision. MEC's first point on appeal is granted.[6]

We reverse the circuit court's judgment and remand with direction to quash the writ of prohibition.

All concur.

---

5. The AHC requested in its scheduling order that the parties address in their motions for

violation of the statute." While Calzone contends in his brief on appeal that the MEC "failed to address the challenge to the validity of the Complaint, and thus to its jurisdiction," this appears from the record to be the first time Calzone intimated a belief that the complaint was improperly filed and he made no further argument regarding the issue at that time.

summary judgment Calzone's claim that the MEC had no "jurisdiction." While Calzone contends that the AHC should have first addressed this claim before allowing discovery, we find no statutory support for this assertion.

6. Because MEC's first point on appeal is dispositive, we need not address its second point on appeal.